GOOD HOPE HEALTH SYS., L.L.C. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[189 N.C. App. 534 (2008)]

GOOD HOPE HEALTH SYSTEM, L.L.C., PETITIONER, AND THE TOWN OF LILLINGTON, PETITIONER-INTERVENOR v. N.C. DEPARTMENT OF HEALTH AND HUMAN SERVICES, DIVISION OF FACILITY SERVICES, CERTIFICATE OF NEED SECTION, RESPONDENT, AND BETSY JOHNSON REGIONAL HOSPITAL, INC., AND AMISUB OF NORTH CAROLINA, INC., D/B/A CENTRAL CAROLINA HOSPITAL, RESPONDENT-INTERVENOR

No. COA05-123-2

(Filed 15 April 2008)

**1. Hospitals and Other Medical Facilities— certificates of need—new institutional health service**

The North Carolina Department of Health and Human Services, Division of Facility Services did not exceed its authority by failing to treat the 2003 certificate of need (CON) application as a change in an existing project under N.C.G.S. § 131E-176(16)e and reviewing it for conformity with criteria in N.C.G.S. § 131E-183(a) that applies only to a new institutional health service because: (1) appellant's argument that a "non-binding" agreement, making no reference to the 2001 Settlement Agreement, was effective to assign any rights under that agreement to appellant, including rights to three operating rooms, was rejected; (2) although appellants contend that GHHS is the successor and assign of Good Hope by virtue of the Term Sheet appended to the 2003 CON application, this argument need not be reached since the express language of the statute limits the validity of a CON to "the defined scope, physical location, and the person named in the application; (3) appellant changed the location and scope of the project and made no showing of development of the 2001 CON to bring its proposal within the provision of N.C.G.S. § 131E-176(16)e; (4) appellant proposed a relocation of operating rooms to a site over ten miles away, which is subject to CON review under N.C.G.S. § 131E-176(16)u; and (5) neither appellant nor Good Hope sought an adjustment under the procedures outlined by the 2003 State Medical Facilities Plan.

**2. Hospitals and Other Medical Facilities— certificates of need—no-need determination for operating rooms**

The North Carolina Department of Health and Human Services, Division of Facility Services did not err as a matter of law in subjecting appellant to the no-need determination for operating rooms under the provisions of the 2003 State Medical Facilities Plan (SMFP), by concluding that Good Hope presently

GOOD HOPE HEALTH SYS., L.L.C. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[189 N.C. App. 534 (2008)]

has two operating rooms rather than three, or by concluding that appellant failed to meet its burden of demonstrating conformity with Criterion 1, because: (1) appellant now seeks to do through a theory of assignment of the 2001 Settlement Agreement what it could not do through the attempted transfer of the 2001 CON, and appellant's argument that a "non-binding" agreement, making no reference to the 2001 Settlement Agreement, was effective to assign any rights under that agreement to appellant, including rights to three operating rooms, was rejected; (2) the pertinent findings of fact support DHHS's conclusion that there were only two operating rooms at Good Hope at the time of the 2003 CON Application; and (3) appellant failed to demonstrate that the provisions of the 2003 SMFP and Criterion 1 did not apply to its 2003 CON application.

**3. Hospitals and Other Medical Facilities— certificates of need—Criterion 3**

The North Carolina Department of Health and Human Services, Division of Facility Services did not err by applying N.C.G.S. § 131E-183(a)(3) ("Criterion 3") even though appellant contends the common numbering indicates that Criteria 3 and 3(a) are alternative and not independent criteria, and the 2003 CON application did not propose new services, because: (1) Criterion 3(a) requires the applicant to show that the needs of the population *presently served* will continue to be adequately met even though the applicant proposes to reduce or eliminate a service, whereas Criterion 3 requires the applicant to show that the population that it *proposes to serve* has a need for the services offered, and the extent to which minority populations will have access to those services; (2) appellant cited no authority for its argument that Criteria 3 and 3(a) are alternative criteria, and none was found; (3) DHHS properly applied both Criteria 3 and 3(a) under the facts of this case because appellant proposed both to relocate and reduce the number of acute care beds and psychiatric beds, to which Criterion 3(a) applied, and to expand the various departments of the hospital, including ten observation beds and an operating room, to which Criterion 3 applied; (4) there was substantial evidence to support DHHS's findings regarding nonconformity with Criterion 3; and (5) the burden rests with appellant to demonstrate that *all* of the CON review criteria have been met.

536 IN THE COURT OF APPEALS

GOOD HOPE HEALTH SYS., L.L.C. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[189 N.C. App. 534 (2008)]

**4. Hospitals and Other Medical Facilities— certificates of need—reasonableness of design, size, and cost of replacement facility**

The North Carolina Department of Health and Human Services, Division of Facility Services (DHHS) did not exceed its authority by requesting evidence demonstrating the reasonableness of the design, size, and cost of the replacement facility outside the scope of the CON statute, allegedly disregarding certain CON licensure rules, relying upon unpromulgated rules to secure information not required by statute, and disregarding evidence contained in the 2003 CON application and DHHS files that demonstrated the reasonableness of its proposal, because: (1) N.C.G.S. § 131E-183(a)(4) states that where alternative methods of meeting the needs for the proposed project exist, the applicant shall demonstrate that the least costly or most effective alternative has been proposed; (2) upon the unique facts of this case, the request for evidence explaining the vast difference in size and cost between the 2001 CON, the 2002 proposal, and the 2003 CON application was within DHHS's statutory authority; (3) although appellants argue DHHS erred by disregarding its own licensure rules and that DHHS "penalized" appellant for not explaining the need for space that is required by DHHS's own licensure requirements, appellants failed to cite any authority for these propositions as required by N.C. R. App. P. 28(b)(6); and (4) the Chief of the CON section testified in great detail as to why cost comparisons between the proposed project and other replacement hospitals were not particularly relevant to the reasonableness of the size and cost outlined in the 2003 CON application, and such testimony provided a rational basis for the DHHS's disregard of such evidence.

**5. Hospitals and Other Medical Facilities— certificates of need—failure to consider written comments and oral arguments at public hearing**

The North Carolina Department of Health and Human Services, Division of Facility Services (DHHS) did not violate N.C.G.S. § 131E-185 by failing to consider written comments and oral arguments made at a public hearing pertaining to the 2003 CON application because: (1) there was evidence before DHHS that many of those who spoke in favor of the proposed hospital were unfamiliar with the relevant criteria, the 2003 CON application or the CON review process; (2) under N.C.G.S. §§ 131E-175 *et*

GOOD HOPE HEALTH SYS., L.L.C. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[189 N.C. App. 534 (2008)]

*seq.*, DHHS's obligation was to hear the public's arguments, whether in favor of or opposed to an application, then decide, in light of all the evidence before it, whether appellant has met its burden of proving that the relevant statutory review criteria have been met; (3) public support was not one of those criteria; and (4) DHHS may hear comments supporting an application yet find that the burden of satisfying the CON criteria has not been met.

**6. Hospitals and Other Medical Facilities— certificates of need—substantive due process—application of review criteria**

The North Carolina Department of Health and Human Services, Division of Facility Services (DHHS) did not violate appellant's substantive due process rights by its application of the CON review criteria because: (1) appellants' reliance upon a September 2003 DHHS survey was untimely as it occurred after DHHS's initial review; (2) the record before DHHS was silent on the issue of non-compliance; (3) the issue of appellant's exemption request was resolved in DHHS's favor, and the 2003 declaratory ruling that resolved the issue of appellant's rights to a transfer of the existing CON has not been overturned on appeal; and (4) Good Hope was not a party to this appeal, and the record provides no support for appellant's claim that its rights have been constitutionally infringed.

Judge TYSON dissenting.

This case originally came before this Court on 14 September 2005, upon the appeal of petitioner, Good Hope Health Systems, L.L.C. ("appellant"), and petitioner-intervenor, Town of Lillington (together, "appellants"), from a Final Agency Decision issued on 10 September 2004, by the North Carolina Department of Health and Human Services, Division of Facility Services. On 3 January 2006, this Court filed an opinion holding that, in light of petitioner's 2005 Certificate of Need application, the appeal was moot and dismissing the appeal. *Good Hope Health Sys., L.L.C. v. N.C. Dep't of Health & Human Servs.*, 175 N.C. App. 296, 623 S.E.2d 307 (2006). Upon appeal, the Supreme Court reversed the dismissal and remanded the matter to this Court. *Good Hope Health Sys., L.L.C. v. N.C. Dep't of Health & Human Servs.*, 360 N.C. 635, 637 S.E.2d 517 (2006). Neither the granting of a 2005 CON to respondent-intervenor Betsy Johnson nor the closing of Good Hope's Erwin facility rendered the matter moot. *Id.* at 637, 637 S.E.2d at 518. Because the 2003 CON application process

GOOD HOPE HEALTH SYS., L.L.C. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[189 N.C. App. 534 (2008)]

was non-competitive and the 2005 CON application process was competitive, petitioner's appeal deserved consideration on the merits. *Id.*

*Smith Moore, LLP, by Maureen Demarest Murray, Susan M. Fradenburg, and William W. Stewart, Jr., for petitioner-appellant, Good Hope Health System, LLC.*

*Morgan, Reeves and Gilchrist, by C. Winston Gilchrist, for petitioner-intervenor appellant, Town of Lillington.*

*Attorney General Roy Cooper, by Special Deputy Attorney General Melissa L. Trippe, for respondent-appellee N.C. Department of Health and Human Services, Division of Facility Services.*

*Wyrick Robbins Yates & Ponton, LLP, by K. Edward Greene and Kathleen A. Naggs, and Nelson Mullins Riley & Scarborough, L.L.P., by Noah H. Huffstetler, III, and Denise M. Gunter, for respondent-intervenor appellee Betsy Johnson Regional Hospital, Inc.*

*Bode Call & Stroupe, L.L.P., by Robert V. Bode and S. Todd Hemphill, for respondent-intervenor appellee Amisub of North Carolina, Inc. d/b/a Central Carolina Hospital.*

STEELMAN, Judge.

The North Carolina Department of Health and Human Services, Division of Facility Services ("Agency") correctly treated appellant Good Hope Health System's 2003 CON application for a Certificate of Need ("CON") as one for a new institutional health service. The Agency did not err in determining that appellant had failed to meet its burden of showing compliance with the relevant statutory review criteria.

## I. Factual Background

### A. Good Hope Hospital's 2001 CON

Good Hope Hospital ("GHH" and "Good Hope") is licensed as an acute care hospital and had been in operation since 1921 in Erwin, North Carolina. Respondent Betsy Johnson Regional Hospital, Inc. ("Betsy Johnson"), is located in Dunn, North Carolina. Both hospitals are located in Harnett County.

In 2001, pursuant to N.C. Gen. Stat. Chapter 131E, Good Hope applied for a CON from the Agency's Certificate of Need Section,

GOOD HOPE HEALTH SYS., L.L.C. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[189 N.C. App. 534 (2008)]

seeking to partially replace its existing facility. The 2001 CON application proposed to replace the existing acute care facility by constructing a replacement facility on a nearby site in Erwin while utilizing the existing campus for outpatient services and administrative support. Good Hope's proposal reduced the number of acute care beds from forty-three to thirty-four, reduced the number of psychiatric beds from twenty-nine to twelve, for a total of forty-six beds, and included three operating rooms, at a cost of $16,159,950. Following conditional Agency approval and Good Hope's subsequent petition for a contested case hearing, Good Hope and the Agency settled disputed matters in a written agreement ("2001 Settlement Agreement").

Among the terms of the 2001 Settlement Agreement was a "Successors and Assigns" clause; a "Modification or Waiver" clause, requiring that any modifications be in writing, signed by the parties, and adopted and approved by the Director of the Agency; and a timetable by which Good Hope committed itself to secure financing by 1 March 2002 and open the replacement facility by 1 December 2003. On 14 December 2001, the Agency issued a CON to Good Hope ("2001 CON") for a forty-six bed hospital with three operating rooms.

Good Hope sought funding from the United States Department of Housing and Urban Development ("HUD") and funding approval from the North Carolina Medical Care Commission ("MCC"), which must approve all HUD financing for non-profit hospitals in North Carolina. Upon MCC's recommendation, Good Hope entered merger discussions with Betsy Johnson. In June 2002, Good Hope advised MCC that a merger was not possible, and MCC unanimously denied Good Hope's request for HUD funding approval.

### B. The Formation of Good Hope Health System, L.L.C.

In August 2002, seeking financing for the proposed replacement facility, Good Hope entered into a Letter of Intent with Triad Hospitals, Inc. ("Triad") to develop a 46-bed acute care hospital in or around Lillington, North Carolina, to replace Good Hope Hospital. Seeking a more centrally-located site, Good Hope and Triad settled on Lillington, over ten miles from the current facility in Erwin. Triad would own 90% of the new hospital and Good Hope would own 10%, with an option to sell out its interest to Triad at an agreed upon price or to acquire an additional 5%. On 10 October 2002, the two entities formed Good Hope Health System, L.L.C. ("appellant" and "GHHS") upon these terms.

GOOD HOPE HEALTH SYS., L.L.C. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[189 N.C. App. 534 (2008)]

GHHS sought Agency approval for its plans for a proposed Lillington hospital in three separate ways: (1) in November 2002, Good Hope and GHHS filed a motion for declaratory ruling seeking a "good cause" transfer of the 2001 CON from Good Hope to appellant; (2) in April 2003, GHHS filed a "full acute care" application with the Agency, hereinafter referred to as the "2003 CON application"; and (3) in August 2003, Good Hope and GHHS filed for exemption under N.C. Gen. Stat. § 131E-184 for "a proposal to replace all seventy-two" beds in a new hospital. The second of these is the subject of this appeal. We briefly discuss the first and third of these approaches prior to discussing the second.

### C. GHHS' Lillington Proposal

#### 1. Request for "Good Cause" Transfer

On 12 November 2002, appellant and Good Hope filed a motion for declaratory ruling, seeking (1) a "good cause" transfer of the 2001 CON from Good Hope to appellant, (2) permission to change the proposed location from Erwin to Lillington or Buies Creek, and (3) permission to increase the size of the replacement facility from 61,788 square feet to 67,874 square feet. The revised cost was $18,523,942. The Agency denied this request on 12 February 2003. The Final Agency Decision in the case *sub judice* noted that the Agency rejected the request for the following reasons:

> GHH and GHHS had failed to demonstrate good cause for the transfer of the CON under G.S. 131E-189(c); the transfer would be impermissible because Triad would own 90% of GHHS; the relocation of the project from Erwin to either Lillington or Buies Creek would constitute a material change in the location; and the increase in the size of the proposal of 6,086 square feet would constitute a material change in the defined scope of the project.

Appellant appealed the denial to Wake County Superior Court. The appeal was subsequently stayed by consent.

#### 2. The Exemption Request

On 21 August 2003, appellant and Good Hope gave notice to the Agency, seeking exemption from CON review of "a proposal to replace all seventy-two" beds, pursuant to N.C.G.S. § 131E-184. Upon the Agency's denial of the exemption request, and prior to exhausting its administrative remedies, appellant sought judicial review in the Superior Court of Harnett County. The trial court's dismissal of the

GOOD HOPE HEALTH SYS., L.L.C. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[189 N.C. App. 534 (2008)]

action was appealed to this Court and affirmed in *Good Hope Hosp., Inc. v. N.C. Dep't of Health & Human Servs.*, 174 N.C. App. 266, 620 S.E.2d 873 (2005). The denial of the exemption request by the Agency was appealed to this Court and affirmed in *Good Hope Hosp., Inc. v. N.C. Dep't of Health & Human Servs.*, 175 N.C. App. 309, 623 S.E.2d 315, *rev. denied, cert. denied,* 360 N.C. 480, 632 S.E.2d 172, *aff'd per curiam,* 360 N.C. 641, 636 S.E.2d 564 (2006).

### 3. The 2003 CON application

After the "good cause" transfer was denied, but before seeking the exemption, appellant and Good Hope sought to file an amendment to Good Hope's 2001 CON in accordance with the Agency's review schedule for changes in previously approved CON projects and relocations of existing facilities.

On 1 April 2003, two weeks before the scheduled review date under the State Medical Facilities Plan, appellant participated in a pre-application conference with the Chief of the Certificate of Need Section, during which appellant proposed relocating all of the functions from the existing Good Hope facility to the Lillington site and increasing the size of the proposed facility from 67,874 to 112,945 square feet. The CON Section Chief advised appellant that: (1) "a project with a different person, a different location, and a different scope would by definition be a [new] project;" (2) appellant "must complete the full acute care application form;" (3) appellant "could not rely on the representations" made by Good Hope in its 2001 application; (4) appellant "would have to justify all aspects of the services proposed in the new CON application, including the demonstration of need for a third operating room[;]" and (5) appellant "must demonstrate under Criteria 4 why the new proposal was a more effective alternative" than the replacement facility already approved.

On 14 April 2003, appellant filed a "full acute care" application to build a new replacement hospital in Lillington. The application proposed forty-six acute care beds, the relocation of all acute care and inpatient psychiatric services from the existing Erwin facility, plus the development of ten observation beds and three operating rooms in a 112,945 square foot facility, at a cost of $33,488,750. The 2003 CON application sought to relocate all hospital departments to the new facility and abandon Good Hope's existing campus, in what appellant termed "a more effective alternative" than that approved in the 2001 CON.

GOOD HOPE HEALTH SYS., L.L.C. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[189 N.C. App. 534 (2008)]

Page One of the 2003 CON application included the following statement:

> Please see Exhibit 1 for a copy of the executive summary of the draft master agreement between Triad Hospitals Inc. and Good Hope Hospital Inc. that relates to formation of Good Hope Health System, LLC. This document constitutes a prior notice to the CON Section that [GHHS] intends to lease the existing hospital, which is an acquisition by lease that is exempt from CON review.

Exhibit 1 was a non-binding "Term Sheet," dated 14 April 2003, which set forth the "material terms" of mutual intentions for a short-term lease of Good Hope Hospital and development and ownership of a replacement facility. The agreement was signed by representatives of the two parties to the agreement, appellant and Good Hope, and required that any "definitive agreements" be "satisfactory to both Triad and GHH." The agreement was silent as to the 2001 Settlement Agreement and was not executed by the Agency.

Pursuant to N.C.G.S. § 131E-185(a1)(2), the Agency held a public hearing on 12 June 2003, and respondents Betsy Johnson and Central Carolina Hospital submitted written comments to the Agency, setting forth reasons why the Agency should not approve appellant's 2003 CON application. At the public hearing, speakers spoke for and against the proposal.

## II. Procedural History

On 26 September 2003, the Agency's CON Section found that the 2003 CON application was non-conforming with numerous regulatory and statutory review criteria and denied appellant's application. On 23 October 2003, appellant filed a petition for a contested case hearing with the Office of Administrative Hearings. Betsy Johnson and Central Carolina Hospital moved to intervene as respondents in support of the Agency's decision. The Administrative Law Judge ("ALJ") granted motions to intervene by respondent-intervenors (together with the Agency, "appellees") and also by petitioner-intervenor Town of Lillington. On 9 July 2004, the ALJ recommended that the Agency's decision be reversed. On 10 September 2004, finding that the ALJ's recommended decision was largely based on factors that were immaterial under the CON statutes, the Agency rejected the ALJ's recommended decision and denied appellant's 2003 CON application. GHHS and the Town of Lillington appeal from the Final Agency Decision,

GOOD HOPE HEALTH SYS., L.L.C. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[189 N.C. App. 534 (2008)]

making 616 separate assignments of error. Good Hope is not a party to this appeal.

## III.  Standard of Review

### A.  Dictated by Issues Raised

The standard of review of an administrative agency's final decision is dictated by the substantive nature of each assignment of error. *N.C. Dep't of Env't & Natural Res. v. Carroll*, 358 N.C. 649, 658-59, 599 S.E.2d 888, 894 (2004) (detailing the standard of review for reversing or modifying an agency's decision under the six grounds specified by N.C.G.S. § 150B-51(b) and classifying those grounds into "law-based" or "fact-based" inquiries); *Total Renal Care of N.C., L.L.C. v. N.C. HHS*, 171 N.C. App. 734, 737-39, 615 S.E.2d 81, 83-84 (2005) (detailing the interplay of the CON statutes with the 1999 Administrative Procedures Act).

### B.  Law-based Inquiries

Where the appellant asserts an error of law in the final agency decision, this Court conducts *de novo* review. *Christenbury Surgery Ctr. v. N.C. HHS*, 138 N.C. App. 309, 311-12, 531 S.E.2d 219, 221 (2000); *see also Total Renal Care*, 171 N.C. App. at 740, 615 S.E.2d at 85. "When the issue on appeal is whether a state agency erred in interpreting a statutory term, an appellate court may freely substitute its judgment for that of the agency . . . ." *Britthaven, Inc. v. N.C. Dept. of Human Resources*, 118 N.C. App. 379, 384, 455 S.E.2d 455, 460 (1995) (quoting *Brooks, Comr. of Labor v. Grading Co.*, 303 N.C. 573, 580-81, 281 S.E.2d 24, 29 (1981)).

### C.  Fact-based Inquiries

Fact-intensive issues, such as sufficiency of the evidence or allegations that a decision is arbitrary or capricious, are reviewed under the whole record test. *See Carroll*, 358 N.C. at 659, 599 S.E.2d at 894-95.

A court applying the whole record test may not substitute its judgment for the agency's as between two conflicting views, even though it could reasonably have reached a different result had it reviewed the matter *de novo*. Rather, a court must examine all the record evidence—that which detracts from the agency's findings and conclusions as well as that which tends to support them—to determine whether there is substantial evidence to justify the agency's decision.

544 IN THE COURT OF APPEALS

GOOD HOPE HEALTH SYS., L.L.C. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[189 N.C. App. 534 (2008)]

*Watkins v. N.C. State Bd. of Dental Exam'rs*, 358 N.C. 190, 199, 593 S.E.2d 764, 769 (2004) (internal citations omitted). " 'Substantial evidence' means relevant evidence a reasonable mind might accept as adequate to support a conclusion." N.C.G.S. § 150B-2(8b) (2005); *see also Watkins*, 358 N.C. at 199, 593 S.E.2d at 769, *Total Renal Care*, 171 N.C. App. at 739, 615 S.E.2d at 84. However, "the 'whole record' test is not a tool of judicial intrusion; instead, it merely gives a reviewing court the capability to determine whether an administrative decision has a rational basis in the evidence." *Hospital Group of Western N.C., Inc. v. N.C. Dept of Human Resources*, 76 N.C. App. 265, 268, 332 S.E.2d 748, 751 (1985) (quoting *In re Rogers*, 297 N.C. 49, 65, 253 S.E.2d 912, 922 (1979)).

## D. Deference under *Britthaven* and *Total Renal Care*

In *Britthaven* and *Total Renal Care*, this Court applied a standard of deference first described by the United States Supreme Court in *Skidmore v. Swift & Company*, 323 U.S. 134, 89 L.Ed. 124 (1944), regarding agency interpretations of enabling statutes.

Although the interpretation of a statute by an agency created to administer that statute is traditionally accorded some deference by appellate courts, those interpretations are not binding. 'The weight of such [an interpretation] in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.' *Skidmore v. Swift & Company*, 323 U.S. 134, 140, 89 L.Ed. 124, 129 (1944).

*Britthaven*, 118 N.C. App. at 384, 455 S.E.2d at 460 (citation omitted); *see also Total Renal Care*, 171 N.C. App. at 740, 615 S.E.2d at 85 (citation omitted). In *Total Renal Care*, this Court added: "If appropriate, some deference to the Agency's interpretation is warranted when we are operating under the 'traditional' standards of review . . ." *Id.*

## IV. The Final Agency Decision

After setting forth the ALJ's findings of fact, including those it rejected, and stating its reasons for rejecting those findings, the Final Agency Decision concluded that (1) the Agency's denial of a "good cause" transfer was binding on GHHS, (2) the 2001 Settlement Agreement could not alter statutory restrictions on transfers of an undeveloped CON, and (3) the 2001 CON held by Good Hope did not relieve GHHS of the requirements that it comply with the 2003 State

GOOD HOPE HEALTH SYS., L.L.C. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[189 N.C. App. 534 (2008)]

Medical Facilities Plan and statutory criteria for a new institutional health service. *Inter alia*, the Agency made the following conclusions of law:

6. The Department's Declaratory Ruling that good cause did not exist for the transfer to GHHS of GHH's undeveloped CON rights is binding on GHHS. G.S. 150B-4. ("A declaratory ruling is binding on the agency and the person requesting it unless it is altered or set aside by the court.")

7. The [2001] CON, by law, is valid only for the defined scope, physical location, and person named in the application. A certificate of need shall not be transferred or assigned except as provided in G.S. 131E-189(c). G.S. 131E-181(a). The Settlement Agreement between the Agency and GHH which led to the issuance of the 2001 CON did not, and properly could not, alter the restriction the CON law imposes upon transfer of undeveloped CONs.

8. The CON law does not permit either the transfer of the [2001] CON to develop the 2001 project with its third operating room from GHH to GHHS nor does it permit the development of an operating room in violation of the 2003 SMFP no-need determination. Even if the CON were transferable, the relocation of an approved, but not yet developed, operating room is subject to the CON requirement set in G.S. 131E-176(16)u for relocation and thus subject to the current SMFP need determination. . . .

9. The prior CON to GHH did not relieve GHHS of the requirement that it comply in this application with Criterion 1 and specifically with the 2003 SMFP need determination regarding addition of a third operating room. G.S. 131E-181(a).

10. While a completed health service facility may be transferred without meeting the review criteria or being subjected to further CON review under the exemption provision of the CON law, G.S. 131E-184, the CON law generally prohibits a CON for an uncompleted project to be transferred. G.S. 131E-181(a).

Among its findings of fact, the Agency included, as ultimate findings of fact, *see Woodard v. Mordecai*, 234 N.C. 463, 470, 67 S.E.2d 639, 644 (1951), the following:

37. Development of new or additional operating rooms are a new institutional health service, the need for which is subject to any

GOOD HOPE HEALTH SYS., L.L.C. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[189 N.C. App. 534 (2008)]

determinative limitations set in the State Medical Facilities Plan ("SMFP"). G.S. 131E-176(16)u, 131E-183(a)(1). (GHHS Ex. 29, 2003 SMFP, pp. 29-52.) In addition, *the relocation of any operating room to a new different [sic] campus is also subject to CON review and must satisfy the criteria in place at the time of the application.* The CON law was amended to this effect after the 2001 application of GHH and before the 2003 CON application of GHHS. G.S. 131E-176(u) [sic]. The application is subject to the statutes, rules, criteria, standards and SMFP in place at the time the review begins. *See* 10A NCAC 14C.0207(a).

. . .

42. The Agency was aware during its review of GHHS' application that GHH had been granted the 2001 CON with the third operating room. However, the Agency concluded correctly that GHHS would have to nevertheless show a need for the third operating room, since that room had not been developed by GHH, and since the project proposed by GHHS in [the 2003 application] proposed a different applicant, location and scope of services than the project proposed by GHH in [the 2001 CON]. G.S. 131E-181(a). (Hoffman, Tr. Vol. 8, pp. 2450-2451).

(emphasis added).

Applying N.C. Gen. Stat. §§ 131E-176(16) and 131E-181(a), the Agency determined that, because the 2003 CON application proposed doubling the size of the facility and the 2001 CON's approved capital expenditure, a change in ownership from Good Hope to Good Hope Health System, L.L.C., and a change in location from Erwin to Lillington, the 2003 CON application could not be treated as an amendment to the 2001 CON. *See* N.C.G.S. § 131E-181(a) (2003). Moreover, because the 2003 CON application proposed the relocation of two operating rooms and added a third, the 2003 CON application was deemed to provide a "new institutional health service" under N.C.G.S. § 131E-176(16)u, which required GHHS to comply with the 2003 State Medical Facilities Plan ("SMFP"). *See* N.C. Gen. Stat. §§ 131E-176(16)u, 131E-183(a) (2003). As noted in the Final Agency Decision, "The 2001 CON was not approved for GHHS, nor for this location in Lillington, nor for this project."

Applying the review criteria for a new institutional health service, the Final Agency Decision affirmed the conclusions and findings of the CON Section and rejected the ALJ's contrary findings as erro-

GOOD HOPE HEALTH SYS., L.L.C. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[189 N.C. App. 534 (2008)]

neous and unsupported by the evidence. The Agency concluded that appellant did not meet its burden of showing that its application met the relevant criteria or that the Agency had acted outside its authority, acted erroneously, arbitrarily or capriciously, used improper procedure, or failed to act as required by law or rule in finding the application non-conforming with relevant statutory review criteria or in disapproving the 2003 CON application.

The Agency rejected the ALJ's conclusion that "the agency substantially prejudiced [appellant's] rights when it denied the 2003 CON application for a CON to build a much needed, centrally located, replacement hospital in Lillington, North Carolina." The ALJ had based his conclusion upon a finding that appellant "is not seeking to replace any operating room which does not already exist or has not already been approved by the CON section for Harnett County." The Agency rejected this finding as contrary to the law and the facts, and rejected the conclusion as "not supported by the evidence and [as] contrary to the CON law. An applicant has no vested right to the approval of a CON application, but must meet the requirements set forth in the statute."

## V. Analysis

### A. Agency Authority to apply N.C.G.S. § 131E-183(a)

[1] In their first argument, appellants contend that the 2003 CON application sought modification of Good Hope's existing 2001 CON, and that the Agency exceeded its authority by (1) failing to treat the 2003 CON application as a change in an existing project under N.C.G.S. § 131E-176(16)e and (2) reviewing the 2003 CON application for conformity with criteria in N.C.G.S. § 131E-183(a) that applies only to a "new institutional health service." We disagree.

#### 1. New Institutional Health Services under N.C.G.S. § 131E-176

Appellants argue that the Agency "exceeded its authority" in classifying its 2003 CON Application as a new institutional health service by ignoring its own statutes, the Agency's 2001 Settlement Agreement with Good Hope, the State Medical Facilities Plan, and prior Agency decisions. Appellants further contend that the Agency erred in applying the statutory review criteria for a new institutional health service because: (1) under the provisions of the 2001 Settlement Agreement, there was not a change in applicant; (2) under N.C.G.S. § 131E-176(16)e, a change of more than fifteen percent of

GOOD HOPE HEALTH SYS., L.L.C. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[189 N.C. App. 534 (2008)]

the approved capital expenditure amount constituted a change to the 2001 CON; and (3) the same capital asset is at issue in both the 2001 CON and the 2003 CON application.

N.C. Gen. Stat. Chapter 131E, Article 9 governs certificates of need for health care facilities. N.C.G.S. §§ 131E-175 *et seq.* (2003). A CON is "valid only for the defined scope, physical location, *and* person named in the application." N.C.G.S. § 131E-181(a) (2003) (emphasis added). A "person" is defined as "an individual, a trust or estate, a partnership, a corporation, including associations, joint stock companies, . . ." N.C.G.S. § 131E-176(19) (2003). As this argument involves an alleged error of law, we review the matter *de novo. Total Renal Care*, 171 N.C. App. at 740, 615 S.E.2d at 85.

The Agency relied upon N.C.G.S. § 131E-176(16)u in its determination that the 2003 CON application mandated review as a new institutional health service. This provision includes in its definition of "[n]ew institutional services:"

(u) The construction, development, establishment, increase in the number, or relocation of an operating room or gastrointestinal endoscopy room in a licensed health service facility, other than the relocation of an operating room or gastrointestinal endoscopy room within the same building or on the same grounds or to grounds not separated by more than a public right-of-way adjacent to the grounds where the operating room or gastrointestinal endoscopy room is currently located.

N.C.G.S. § 131E-176(16)u (2003).

Good Hope was awarded the 2001 CON for the construction of a sixteen million dollar facility totaling 61,788 square feet in Erwin, North Carolina. At the time of the 2003 CON application, Good Hope had entered into a joint venture with Triad, forming appellant. Appellants argue that there was no change in the applicant for the 2003 CON application because the Agency's 2001 Settlement Agreement with Good Hope provided that "[t]his agreement shall be binding upon the Parties and their successors and assigns." Appellants contend that GHHS is the successor and assign of Good Hope by virtue of the Term Sheet appended to the 2003 CON application. We need not reach this argument because the express language of the statute limits the validity of a CON to "the defined scope, physical location, *and* the person named in the application." N.C.G.S.

GOOD HOPE HEALTH SYS., L.L.C. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[189 N.C. App. 534 (2008)]

§ 131E-181(a) (emphasis added). Even assuming *arguendo* that there was no material change in either the scope or location of the proposed hospital, appellant's argument that it has rights under the 2001 Settlement Agreement is unpersuasive, as discussed in Section V.A.2.a.ii below.

The evidence before the Agency, presented in appellant's 2003 CON application, proposed: (1) a thirty-three million dollar facility totaling 112,945 square feet, (2) with three operating rooms, ten observation beds, private rooms, and other expanded services, (3) located in Lillington rather than Erwin, (4) owned by appellant GHHS, rather than Good Hope, the holder of the 2001 CON. Good Hope would instead be a minority shareholder, owning only ten percent of the facility. Moreover, appellant made no showing of "development of the [2001 CON]," which is requisite to treatment as a change in project under N.C.G.S. § 131E-176(16)e.

Appellant changed the location and scope of the project and made no showing of development of the 2001 CON to bring its proposal within the provision of N.C.G.S. § 131E-176(16)e. Appellant proposed a relocation of operating rooms to a site over ten miles away, which is subject to CON review under N.C.G.S. § 131E-176(16)u. Under these circumstances, we hold that the Agency acted within its authority to treat the 2003 CON application as one for a new institutional health service rather than as a modification to the 2001 CON. *See* N.C.G.S. §§ 131E-181(a), 131E-176(16) (2003).

### 2. Burden of Proof on Applicant for CON

N.C. Gen. Stat. § 131E-183(a) charges the Agency with reviewing all CON applications utilizing a series of criteria set forth in the statute. The application must either be "consistent with or not in conflict with these criteria before a certificate of need for the proposed project shall be issued." N.C.G.S. § 131E-183(a) (2003). A certificate of need may not be granted which would allow more medical facilities or equipment than are needed to serve the public. *See* N.C.G.S. §§ 131E-175(4), 131E-183(a)(1) (2003). Each CON application must conform to all applicable review criteria or the CON will not be granted. N.C.G.S. § 131E-183(a) (2003); *see also Presbyterian-Orthopaedic Hosp. v. N.C. Dep't of Human Resources*, 122 N.C. App. 529, 534, 470 S.E.2d 831, 834 (1996). The burden rests with the applicant to demonstrate that the CON review criteria are met. *See Presbyterian-Orthopaedic Hosp.*, 122 N.C. App. at 534, 470 S.E.2d at 834.

GOOD HOPE HEALTH SYS., L.L.C. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[189 N.C. App. 534 (2008)]

### a. Criterion One

N.C.G.S. § 131E-183(a)(1) ("Criterion 1") provides:

(1) The proposed project shall be consistent with applicable policies and need determinations in the State Medical Facilities Plan, the need determination of which constitutes a determinative limitation on the provision of any health service, health service facility, health service facility beds, dialysis stations, operating rooms, or home health offices that may be approved.

N.C.G.S. § 131E-183(a)(1) (2003).

For purposes of appellant's 2003 CON application, the 2003 SMFP controlled. The 2003 SMFP applied the need methodology of the 2002 SMFP while the Agency developed a new methodology to reflect amendments made to the CON statute to include regulation of operating rooms. The determinative limitation for operating rooms in Harnett County's service area, based upon the 2002 SMFP need methodology, was that the service area *had no need for additional operating rooms*. In fact, including the adjustment for the approved but as yet undeveloped operating room under Good Hope's 2001 CON, the 2003 SMFP showed a *surplus* of four operating rooms for that service area. Based upon Good Hope's 2002 License Renewal Application, the 2003 SMFP inventory of operating rooms reflected that there were two operating rooms at Good Hope Hospital.

The 2003 SMFP also provided a mechanism for seeking adjustments to the need and no-need determinations given in the draft SMFP. Neither appellant nor Good Hope sought an adjustment under the procedures outlined by the 2003 SMFP.

### i. Contentions of Appellant

[2] Appellants contend that the Agency erred as a matter of law in subjecting it to the no-need determination for operating rooms under the provisions of the 2003 SMFP. Appellants further argue that the Agency's conclusion that the 2003 CON application was nonconforming with Criterion 1 must be set aside as contrary to the 2001 Settlement Agreement because (1) under the 2001 Settlement Agreement, Good Hope was entitled to three operating rooms; (2) because appellant is "a successor or assignee" under the terms of the 2003 Term Sheet, the Final Agency Decision "fails to abide" by the terms of its 2001 Settlement Agreement with Good Hope; and (3) interpretation of the language of the 2001 Settlement Agreement is a

GOOD HOPE HEALTH SYS., L.L.C. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[189 N.C. App. 534 (2008)]

question of law. Appellants then argue in the alternative that the Agency exceeded its authority in concluding that Good Hope had only two operating rooms.

### ii.  GHHS Has No Rights under the 2001 Settlement Agreement

We review *de novo* appellants' argument that the Agency exceeded its authority and erred as a matter of law by ignoring the provisions of the 2001 Settlement Agreement. We note initially that Good Hope was not a named applicant on the 2003 CON application and is not a party to this appeal. Appellant asserts that the 2001 Settlement Agreement is a binding contract and that Good Hope's rights were transferred to GHHS under the express language of the Term Sheet attached to the 2003 CON application, then requests this Court to interpret, as a question of law, the "plain language of the Settlement Agreement."

In 2002, appellant sought a declaratory ruling from the Agency that "good cause" existed for a transfer of the 2001 CON from Good Hope to GHHS. *See* N.C.G.S. § 131E-189(c). This request was denied by the Agency. This ruling has not been overturned, and the appeal of this decision has been stayed.

Appellant now seeks to do through a theory of assignment of the 2001 Settlement Agreement what it could not do through the attempted transfer of the 2001 CON. In its brief, appellant relies solely upon the Term Sheet as the basis for its argument that it is a successor or assignee of Good Hope. This document expressly states that "this non-binding Term Sheet merely constitutes a statement of mutual intentions and any and all obligations of the parties shall be memorialized in definitive agreements reflecting the terms set forth herein." The Term Sheet contains provisions that GHHS would lease the existing facility from Good Hope; that Good Hope would acquire land in Harnett County that would be leased to GHHS; and that GHHS would construct "an acute care replacement hospital" on the site.

We reject appellant's argument that a "non-binding" agreement, making no reference to the 2001 Settlement Agreement, was effective to assign any rights under that agreement to appellant, including rights to three operating rooms.

### iii.  Good Hope had Two, not Three, Operating Rooms

We review *de novo* appellants' argument that the Agency erred as a matter of law in concluding that Good Hope presently has two oper-

552 IN THE COURT OF APPEALS

GOOD HOPE HEALTH SYS., L.L.C. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[189 N.C. App. 534 (2008)]

ating rooms rather than three. *See Total Renal Care,* 171 N.C. App. at 740, 615 S.E.2d at 85. However, we review the Agency's findings of fact supporting its conclusions of law under a whole record test review. *See Carroll,* 358 N.C. at 659, 599 S.E.2d at 894-95. Where substantial evidence exists to justify the Agency's decision, we may not substitute our judgment for the Agency's as between two conflicting views, *Watkins,* 358 N.C. at 199, 593 S.E.2d at 769, but are limited to determining whether the Agency's decision had a rational basis in the evidence. *Hospital Group of Western N.C.,* 76 N.C. App. at 268, 332 S.E.2d at 751.

In its 2003 CON Application, appellant sought to justify the three proposed operating rooms as follows:

> The 2003 State Medical Facilities Plan (SMFP) inventory of operating rooms reflects the hospital[']s two share[d] operating rooms *plus the third operating room that is CON approved for development by Good Hope Hospital. Therefore, Good Hope Hospital already has a total of three shared operating rooms that are allocated in the [2003] SMFP.*

(emphasis added).

At the time of the 2003 CON Application, Good Hope had two operating rooms. A third operating room was approved under the 2001 CON. This was reflected in the 2003 SMFP, which was based upon Good Hope's 2002 License Renewal Application and agency files reflecting the 2001 CON. The Agency made the following specific findings of fact concerning a room that appellant now contends was a third, active operating room:

> 49. GHHS also contends that the proposed third operating room is not an additional operating room subject to the SMFP no-need determination on the ground that Good Hope Hospital had identified in some of its licensing renewal applications filed in the 1980's and early 1990's, a third room in its operating suite used for cystoscopy and endoscopy procedures, which room subsequently had been used as a storage room for a number of years, and which GHHS now contends should have been considered by the Agency as a third operating room. (GHHS Ex. 16, 52-57, 1988-1994 Hospital License Renewal Applications).

> 50. There was no evidence that this room was in use as an operating room at the time of the [2003] CON application nor at any

GOOD HOPE HEALTH SYS., L.L.C. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[189 N.C. App. 534 (2008)]

relevant time in the past. The evidence that emerged was that this room is used as a storage room and has been so used for a number of years. Certainly, representatives of neither the CON Section, GHH, nor GHHS had any awareness at the time of the review of the possible past use for an endoscopy or cystoscopy procedure room of what is now a storage room. (Annis, Tr. Vol. 3, p. 934; French, Tr. Vol. 12, p. 3530).

51. The 2003 SMFP reflected that Good Hope Hospital had two existing operating rooms. In addition, the 2003 SMFP listed one approved operating room for Harnett County, reflecting the operating room approved (but not yet developed) in GHH's [2001] CON. (GHHS Ex. 29, 2003 SMFP at p. 63, 73; Keene, Tr. Vol. 15, pp. 4402-4403, 4451.) Based on the record, this is correct.

52. GHH did not contest the inventory as reported in the 2003 SMFP, as that inventory was based on GHH's own license renewal forms.

53. GHH's 2000, 2001, and 2002 Hospital License Renewal Applications report that Good Hope Hospital had two shared operating rooms (shared means used for both inpatient and outpatient or ambulatory procedures), no endoscopy procedure rooms, and no operating rooms or endoscopy procedure rooms which were not in use. (GHHS Ex. 8-10.)

54. GHH's 2001 and 2003 replacement hospital CON applications represented that Good Hope Hospital had two shared operating rooms and no endoscopy procedure rooms. (GHHS Ex. 5, 2001 CON application, p. 28; GHHS Ex. 1, CON application, p. 28.)

We hold that each of these findings is supported by substantial evidence in the record, as carefully documented by the Agency in its decision. These findings of fact in turn support the Agency's conclusion that there were only two operating rooms at Good Hope at the time of the 2003 CON Application.

### iv. Appellant Required to Comply with 2003 SMFP

We review *de novo* appellant's contention that the Agency misapplied the law by requiring GHHS to comply with the no-need determination for operating rooms under the 2003 SMFP.

Appellant had no rights to a third operating room under the 2001 Settlement Agreement. Good Hope had only two operating rooms.

Thus, appellant has failed to demonstrate that the provisions of the 2003 SMFP and Criterion 1 did not apply to its 2003 CON application. We hold that the Agency did not err in subjecting appellant to the no-need determination of the 2003 SMFP.

### v. Conformity with Criterion 1

It was appellant's burden to demonstrate that its 2003 CON application was consistent with or not in conflict with Criterion 1. The Agency's findings support its conclusion that the application was non-conforming with Criterion 1. Accordingly, we hold that the Agency did not err in concluding that appellant failed to meet its burden of demonstrating conformity with Criterion 1.

Appellants make no further argument regarding conformity with Criterion 1 other than those addressed above concerning its purported right to three operating rooms. Any additional assignments of error pertaining to Criterion 1 are deemed abandoned. N.C. R. App. P. 28(b)(6) (2007).

### b. Criterion Three

### i. Contentions of Appellant

**[3]** Appellant contends that the Agency erred in applying N.C.G.S. § 131E-183(a)(3) ("Criterion 3") because the "common numbering indicates that Criteria 3 and 3(a) are alternative and not independent criteria" and the 2003 CON application did not propose new services. In the alternative, appellant contends that the Agency erred in finding its 2003 CON application non-conforming with Criterion 3, in part because conformity with Policy AC-5 requires the Agency to recognize that the 2003 CON application established the need for the number and appropriate occupancy or utilization of acute care beds under Criterion 3.

### ii. Mixed Question of Law and Fact

We review the Agency's statutory interpretation and legal conclusions under a *de novo* standard of review. *See Total Renal Care*, 171 N.C. App. at 740, 615 S.E.2d at 85. However, we review the Agency's findings of fact supporting its conclusions of law under a whole record test review. *See Carroll*, 358 N.C. at 659, 599 S.E.2d at 894-95. Where substantial evidence exists to justify the Agency's decision, we may not substitute our judgment for the Agency's as between two conflicting views. *See Watkins*, 358 N.C. at 199, 593 S.E.2d at 769.

GOOD HOPE HEALTH SYS., L.L.C. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[189 N.C. App. 534 (2008)]

### iii. Criteria 3 and 3(a)

Criterion 3(a) requires the applicant to show that the needs of the population *presently served* will continue to be adequately met even though the applicant proposes to reduce or eliminate a service. *See* N.C.G.S. § 131E-183(a)(3a) (2003). Criterion 3 requires the applicant to show that the population that it *proposes to serve* has a need for the services offered, and the extent to which minority populations will have access to those services:

> 3. The applicant shall identify the population to be served by the proposed project, and shall demonstrate the need that this population has for the services proposed, and the extent to which all residents of the area, and, in particular, low income persons, racial and ethnic minorities, women, handicapped persons, the elderly, and other underserved groups are likely to have access to the services proposed.

N.C.G.S. § 131E-183(a)(3) (2003). As previously discussed, the burden rests with appellant to demonstrate that all of the CON review criteria have been met. *See Presbyterian-Orthopaedic Hosp.*, 122 N.C. App. at 534, 470 S.E.2d at 834.

Appellant cites no authority for its argument that Criteria 3 and 3(a) are alternative criteria, and we have found none.

The Agency properly applied both Criteria 3 and 3(a) under the facts of this case because appellant proposed both to relocate and reduce the number of acute care beds and psychiatric beds, to which Criterion 3(a) applied, and to expand the various departments of the hospital, including ten observation beds and an operating room, to which Criterion 3 applied. The Agency found that appellant's 2003 CON application was consistent with Criterion 3(a), but not with Criterion 3. For the reasons set forth in our discussion of Criterion 1, we reject appellant's argument that it need not conform to Criterion 3 because it had rights to three operating rooms under the 2001 Settlement Agreement.

### iv. Conformity with Criterion 3

Appellant argues that the Agency ignored public support and evidence in its 2003 CON Application and in Agency files that demonstrated conformity with Criterion 3. Under the appropriate standard of review, we first determine whether there was substantial evidence supporting the Agency's findings related to Criterion 3, and, where

GOOD HOPE HEALTH SYS., L.L.C. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[189 N.C. App. 534 (2008)]

substantial evidence exists, we cannot substitute our judgment for that of the Agency. *See Total Renal Care*, 171 N.C. App. at 739, 615 S.E.2d at 84.

The Agency found that GHHS had demonstrated the need to replace the existing facility, but had not adequately demonstrated that the population projected to be served needed the scope of services proposed by the application, then documented in detail its findings related to Criterion 3.

Despite historical declines in inpatient utilization, appellant projected double-digit inpatient utilization rate increases in 2005-2008 (19.5%, 20.68%, and 13.4%). These projections followed years of no change, decreases (-12.7% in 2000-2001, -6.7% in 2002-2003), and a single increase (10.5% in 2001-2002). The Final Agency Decision included these numbers in chart form, then made the following findings:

67. The evidence shows that, in finding that GHHS had not justified these projected increase in utilization of its licensed acute care beds in the first three operating years of the new facility, the Agency found as follows:

The above projected increases in utilization were dependent on the applicant increasing its market share in the proposed service area through recruitment of additional physicians who GHHS predicted would increase the number of admissions above and beyond population growth.

GHHS did not provide current or projected market share data for existing facilities in the area to demonstrate the basis for its projected increase in admissions due to physician recruitment.

The only market share data provided in the application is based on Good Hope's discharges in FY 99 as reported to HCIA (*see* Exhibit 10).

GHHS assumed that the patient origin for the new replacement hospital would remain the same as historical patient origin even though the hospital is moving farther away from the population it currently serves in Sampson and Cumberland Counties. Since geographic access affects patient origin (or more simply put, the distance of the patient from the hospital helps determine to which hospital a patient will be sent), it was not reasonable to project the same patient origin

GOOD HOPE HEALTH SYS., L.L.C. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[189 N.C. App. 534 (2008)]

or market share from these counties. There was no evidence to demonstrate that such an assumption would be reasonable in the circumstances of this project.

GHHS's application projected that it would recruit 11 additional physicians and assumes an average of 86 to 97 admissions per year per physician. However, the application did not state any basis for assuming this number of patient admissions per new physician. (GHHS Ex. 2, Agency File, p. 1176-1176; Phillips, Tr. Vol. 6, p. 1780-1786; Hoffman, Tr. Vol. 16, pp. 4866-67.)

68. The application does not show any percentages of Harnett County patients who are now going to other hospitals, but who would come to Good Hope Hospital if it built a new hospital in Lillington. (Annis, Tr. Vol. 3, p. 997.)

69. The Agency found that GHHS did not adequately document in the application the reasonableness of its assumptions regarding increase in inpatient admissions. (GHHS Ex. 2, Agency File, p. 1176).

70. GHHS' application cited and relied upon a physician recruitment plan to justify its projection of an increase in utilization, but did not include the recruitment plan. (GHHS Ex. 1, p. 63-64.) GHHS' application projected a net increase of 11 admitting physicians to the staff by 2008. (*Id.*)

71. GHHS justified the projected increase in staff in part on the fact that GHHS [sic] had added 15 physicians to its staff in the past five years. (*Id.*) GHHS' application, however, failed to show how many physicians it had lost during that same five year period. The projection implicitly assumed that GHHS would not lose any physician staff in the future. (*Id.*; Annis, Tr. Vol. 5, p. 1411; French, Tr. Vol. 12, p. 3559).

72. This assumption is unreasonable. The chart used in the application to describe the stable medical staff demonstrated that Good Hope had experienced a *net loss* of two medical professionals from the time of the 2001 CON application to the time of the 2003 CON application. (GHHS Ex. 1, p. 225; French, Tr. Vol. 12, p. 3561.)

73. . . . GHHS' application includes a projection that each physician will admit 85 to 100 patients per year. (GHHS Ex. 1, CON

GOOD HOPE HEALTH SYS., L.L.C. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[189 N.C. App. 534 (2008)]

application, p. 64.) However, the application does not include the assumptions upon which this projection is based and provides no reasonable basis upon which the Agency may accept this assumption.

74. GHHS's application does not identify which physicians are or will be admitting physicians. (French, Tr. Vol. 12, p. 3571.) There was no showing in the GHHS application that GHHS intended to retain any physicians as employees of the hospital. (*Id.*; French, Tr. Vol. 12, p. 3569).

We hold that each of these findings is supported by substantial evidence in the record, as carefully documented by the Agency in its Decision.

Although appellant did not include its physician recruitment plan in the 2003 CON application, the plan was offered as evidence by another party, and in its Decision, the Agency included the following findings related to the plan:

77. The physician recruitment plan referred to in the application was not included in the application. (Annis, Tr. Vol. 5, p. 1403.). The recruitment plan contains information that undercuts the assumptions used in the projections. GHHS' physician recruitment plan, which GHHS cited as the basis for projections in the application, included the following statements:

With this relocation, mostly [sic] likely the residents of Dunn that would utilize Good Hope Hospital as opposed to Betsy Johnson Hospital will for a short time . . . continue to use Good Hope, but ultimately with medical staff change Dunn residents will depend more on Betsy Johnson Hospital. With this anticipated change, Good Hope will need to depend more on a new medical staff than it will upon those physicians holding privileges at both Good Hope and Betsy Johnson.

By 2006[,] of the currently active admitting physicians at Good Hope Hospital, almost 30 will be—have ages in the sixties and most likely either retired or limiting their practice in anticipation of retirement. Half this group will be past retirement age. This age group of physicians currently makes up more than 65 percent of the admissions at the hospital, including all admissions to the psychiatric service. . . . Annualizing FY03 activity indicated admissions this year continue a three-year decline. Inpatient activity is down over 20

GOOD HOPE HEALTH SYS., L.L.C. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[189 N.C. App. 534 (2008)]

percent from 2000 levels in part due to physician deaths and resignations. The heavy dependence on the more elderly physicians, recent physician deaths and resignations all combine to suggest the hospital is quickly approaching a crisis situation.

(CCH Ex. 10, p. 3; Annis, Tr. Vol. 5, pp. 1404-1411.)

78. GHHS did not contest the accuracy of the[] conclusions [in Finding of Fact no. 77].

The Agency indicated that GHHS' omission of the recruitment plan, containing this information, "shows that the application omitted material facts of which GHHS was or should have been aware which would reduce the patient utilization that could reasonably be projected to arise from recruit[ing] new physicians."

We hold that there was substantial evidence to support the Agency's findings regarding non-conformity with Criterion 3. These findings support the Agency's conclusion that appellant failed to meet its burden of demonstrating conformity with Criterion 3.

We find no error in the Agency's interpretation of Criterion 3 to require the applicant to demonstrate that the proposal and all its components, not just the number of replacement beds,[1] are needed by the particular population that the applicant seeks to serve. As noted above, because the Agency's findings are supported by substantial evidence and those findings support its conclusions of law regarding Criterion 3, the Agency did not err in concluding that it was non-conforming with Criterion 3.

### 3. The Agency Acted Within Its Authority

We hold that the Agency's interpretation of its enabling statutes is reasonable and due "some deference." *Total Renal Care*, 171 N.C. App. at 740, 615 S.E.2d at 85. The Agency demonstrated great thoroughness in its consideration, and we find no flaws in its reasoning. *Britthaven*, 118 N.C. App. at 384, 455 S.E.2d at 460; *Total Renal Care*, 171 N.C. App. at 740, 615 S.E.2d at 85. Its rulings in this matter are consistent with its earlier rulings involving these parties. *Id.* Accordingly, we hold that the Agency did not exceed its authority in

---

1. Without citing any authority, appellant argues that the Agency's finding of conformity with Policy AC-5 of the 2003 SMFP renders its finding of non-conformity with Criterion 3 (as well as Criteria 5, 6, and 18(a)) erroneous as a matter of law. Appellant contends that conformity with Policy AC-5 establishes the need for the number of acute care beds proposed in the 2003 CON Application.

GOOD HOPE HEALTH SYS., L.L.C. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[189 N.C. App. 534 (2008)]

finding appellant's application non-conforming with Criteria 1 and 3, *see Watkins*, 358 N.C. at 199, 593 S.E.2d at 769, and that the Agency's decision has a rational basis in the evidence. *Hospital Group of Western N.C.*, 76 N.C. App. at 268, 332 S.E.2d at 751.

The burden rests with appellant to demonstrate that *all* of the CON review criteria have been met. *See Presbyterian-Orthopaedic Hosp.*, 122 N.C. App. at 534, 470 S.E.2d at 834. Given our holdings regarding Criteria 1 and 3, we need not reach appellants' arguments as to criteria 4, 5, 6, 12, or 18a.

This argument is without merit.

### B. Agency Review of the GHHS Proposal

[4] In their second argument, appellants contend that the Agency exceeded its authority by requesting evidence demonstrating the reasonableness of the design, size, and cost of the replacement facility outside the scope of the CON statute, disregarding certain CON licensure rules, relying upon unpromulgated rules to secure information not required by statute, and disregarding evidence contained in the 2003 CON application and Agency files that demonstrated the reasonableness of its proposal. We disagree.

### 1. Agency Authority under the CON Statute

Appellants first contend that the language in N.C.G.S. § 131E-182(b) precludes the Agency from asking for justification for the great increase in square footage and cost in the 2003 CON application when appellant was required to file a new CON application and precluded from exemption of a CON review. *See Good Hope Hosp., Inc. v. N.C. Dep't of Health & Human Servs.*, 175 N.C. App. 309, 623 S.E.2d 315, *rev. denied, cert. denied*, 360 N.C. 480, 632 S.E.2d 172, *aff'd per curiam*, 360 N.C. 641, 636 S.E.2d 564 (2006). Appellants contend that the Agency relied upon "unpromulgated rules" to circumvent the statutory provisions by requiring market share data, projections of admissions in physician's letters, and particularized square footage requirements by department to demonstrate conformity with the statutory criteria.

Appellants maintain that the scope of the Agency's authority is limited to that under N.C.G.S. § 131E-182(b), which states:

An applicant shall be required to furnish only that information necessary to determine whether the proposed new institu-

GOOD HOPE HEALTH SYS., L.L.C. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[189 N.C. App. 534 (2008)]

tional health service is consistent with the review criteria implemented under G.S. 131E-183 and with duly adopted standards, plans and criteria.

N.C.G.S. § 131E-182(b) (2003). However, N.C.G.S. § 131E-183(a)(4) states "[w]here alternative methods of meeting the needs for the proposed project exist, the applicant shall demonstrate that the least costly or most effective alternative has been proposed." N.C.G.S. § 131E-183(a)(4) (2003).

Good Hope notified the Agency in May 2003 that it was "pursuing legitimate, alternative avenues to obtain any needed government approvals of its replacement hospital project." Good Hope has not relinquished its 2001 CON for a 61,788 square foot replacement facility, maintaining that if the 2003 CON application were not approved, it would "consider at that time whether to reopen the declaratory ruling appeal, to continue to develop [the 2001 CON] or to pursue appeal" of the 2003 CON application. Appellant and Good Hope together represented to the Agency in the November 2002 request for a "good cause" transfer that their proposal for a single-story, slightly enlarged facility was the "least costly and most effective" alternative. Upon the unique facts of this case, we hold that the request for evidence explaining the vast difference in size and cost between the 2001 CON, the 2002 proposal, and the 2003 CON application was within the Agency's statutory authority. See N.C.G.S. § 131E-183(a)(4).

## 2. Appellant's Burden to Show Compliance

Appellants next contend that, because appellant provided all the information requested by the application form, as well as a chart comparing categories of space between the 2001 and 2003 CON applications and reasons for the differences, the Agency's determination that it was non-conforming should be set aside as improperly based upon unpromulgated rules.

Specifically, appellants contend that the 2003 CON application demonstrated the reasonableness of the size and cost of the proposed replacement hospital and supported the ALJ's findings of conformity with Criteria 3, 4, 5, 6, 12, and 18a. As appellants' argument does not address Criterion 1, and we have already addressed the Agency's conclusion that the 2003 CON application was non-conforming with Criterion 1, we need not address these arguments.

562          IN THE COURT OF APPEALS

GOOD HOPE HEALTH SYS., L.L.C. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[189 N.C. App. 534 (2008)]

### 3. Space Required by Licensure Regulations

Appellants next argue that the Agency erred by disregarding its own licensure rules and that the Agency "penalized" appellant for not explaining the need for space that is required by the Agency's own licensure requirements.

Appellants cite no authority for these propositions. Failure to cite authority is a violation of N.C. R. App. P. 28(b)(6) and subjects this argument to dismissal. *Atchley Grading Co. v. W. Cabarrus Church,* 148 N.C. App. 211, 212-13, 557 S.E.2d 188, 189 (2001); *Wilson v. Wilson,* 134 N.C. App. 642, 643, 518 S.E.2d 255, 256 (1999).

### 4. Evidence from the Agency's Files

Finally, appellants argue that the Agency disregarded evidence in its own files showing that appellant's proposal was reasonable compared to other hospital construction projects. The Chief of the Certificate of Need section testified in great detail as to why cost comparisons between the proposed project and other replacement hospitals were not particularly relevant to the reasonableness of the size and cost outlined in the 2003 CON application. Such testimony provides a rational basis for the Agency's disregard of such evidence.

### 5. Non-Conformity with Statutory Criteria

Accordingly, we conclude that the Agency did not exceed its authority in determining that appellant failed to demonstrate that its application met the CON review criteria. *See Presbyterian-Orthopaedic Hosp.,* 122 N.C. App. at 534, 470 S.E.2d at 834.

This argument is without merit.

### C. N.C.G.S. § 131E-185: The Public Hearing

[5] In their third argument, appellants contend that the Agency violated N.C.G.S. § 131E-185 by failing to consider written comments and oral arguments made at a public hearing pertaining to the 2003 CON application. We disagree.

We review this argument *de novo* as a matter of statutory interpretation. *See Britthaven,* 118 N.C. App. at 384, 455 S.E.2d at 460; *Total Renal Care,* 171 N.C. App. at 740, 615 S.E.2d at 85. Specific findings are not required on each piece of evidence presented. *See Flanders v. Gabriel,* 110 N.C. App. 438, 440, 429 S.E.2d 611, 612 (1993) (stating that the tribunal "need only find those facts which are material to the resolution of the dispute").

GOOD HOPE HEALTH SYS., L.L.C. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[189 N.C. App. 534 (2008)]

N.C.G.S. § 131E-185 sets forth procedures and requirements for the CON review process, allowing any interested party to submit written comments or make oral comments at the scheduled public hearing. The provisions of N.C.G.S. § 131E-185 provide no support for appellants' conclusion that because the Agency denied appellant's CON application, and there were arguments made at the public hearing in favor of its application, *ergo* the Agency failed to consider those comments. There was evidence before the Agency that many of those who spoke in favor of the proposed hospital were unfamiliar with the relevant criteria, the 2003 CON application, or the CON review process.

Under N.C.G.S. §§ 131E-175 *et seq.*, the Agency's obligation is to hear the public's arguments, whether in favor of or opposed to an application, then decide, in light of *all* the evidence before it, whether appellant has met its burden of proving that the relevant statutory review criteria have been met. Public support is not one of those criteria. *See* N.C.G.S. §§ 131E-183(a). The Agency may hear comments supporting an application yet find that the burden of satisfying the CON criteria has not been met. We hold that the Agency's application of the statute is without error. *See Britthaven*, 118 N.C. App. at 384, 455 S.E.2d at 460.

This argument is without merit.

## D.  Constitutionality of the Agency's Action

[6] In their fourth argument, appellants contend that the Agency unconstitutionally applied the CON review criteria, thus violating appellant's substantive due process rights. We disagree.

Appellants argue that the Agency's "improper" denial of the 2003 CON application deprives them of a "vested right" to continue operating as a hospital. We find appellants' reliance upon a September 2003 Agency survey to be untimely as it occurred after the Agency's initial review. The record that was before the Agency is silent on the issue of non-compliance. Moreover, the issue of appellant's exemption request was resolved in the Agency's favor, and the 2003 declaratory ruling that resolved the issue of appellant's rights to a transfer of the existing CON has not been overturned on appeal. Good Hope is not a party to this appeal, and the record provides no support for appellant's claim that its rights have been constitutionally infringed.

This argument is without merit.

GOOD HOPE HEALTH SYS., L.L.C. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[189 N.C. App. 534 (2008)]

## VI. Conclusion

On remand, this Court was directed by the Supreme Court to review this case "on the merits." *Good Hope Health Sys., L.L.C. v. N.C. Dep't of Health & Human Servs.*, 360 N.C. 635, 637, 637 S.E.2d 517, 518 (2006). Had the Supreme Court intended for this Court to reverse the decision of the Agency based upon treating GHHS' application as a modification under N.C. Gen. Stat. § 131E-176(16)(e), it would have simply adopted Judge Tyson's dissent. The Supreme Court did not do this. *Id.*

This case has been reviewed upon the arguments presented and the voluminous record in this case, and not by construing statements of counsel in oral arguments as "stipulations."

The Agency did not err in its conclusion that appellant failed to carry its burden of demonstrating compliance with the relevant statutory review criteria. *See Presbyterian-Orthopaedic Hosp.*, 122 N.C. App. at 534-35, 470 S.E.2d at 834. Accordingly, we conclude that the Agency did not err in the Final Agency Decision by concluding as a matter of law that appellant should be denied a certificate of need. *Id.* The Final Agency Decision is affirmed.

Having thoroughly reviewed the record before the Agency, we find appellants' remaining arguments to be without merit. Further, assignments of error listed in the record but not argued in appellants' brief or for which no authority is cited are deemed abandoned. N.C. R. App. P. 28(b)(6) (2007).

Because we affirm the Final Agency Decision, we need not address the Agency's or respondent-intervenor Betsy Johnson's cross-assignments of error. N.C. R. App. P. 10(d) (2007); *see also Carawan v. Tate*, 304 N.C. 696, 701, 286 S.E.2d 99, 102 (1982).

AFFIRMED.

Judge GEER concurs.

Judge TYSON dissents.

TYSON, Judge dissenting.

This appeal initially came before this Court over two and one-half years ago on 14 September 2005. Good Hope Hospital System,

GOOD HOPE HEALTH SYS., L.L.C. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[189 N.C. App. 534 (2008)]

L.L.C. ("GHHS") appealed from the North Carolina Department of Health and Human Services, Division of Facility Services's ("Agency") Final Decision denying GHHS's 2003 Certificate of Need ("CON") application. *Good Hope Health Sys., L.L.C. v. N.C. Dep't of Health & Human Servs.,* 175 N.C. App. 296, 623 S.E.2d 307 (2006). A divided panel of this Court dismissed GHHS's appeal as moot based upon GHHS's submission of its 2005 CON application. *Id.* The North Carolina Supreme Court *per curiam* reversed and remanded this case to this Court eighteen months ago on 17 November 2006 "for consideration on the merits." *Good Hope Health Sys., L.L.C. v. N.C. Dep't of Health & Human Servs.,* 360 N.C. 635, 637, 637 S.E.2d 517, 518 (2006). Our Supreme Court stated:

> Our decision is primarily directed by the fundamental differences between the criteria used to evaluate GHHS's 2003 and 2005 CON applications. The 2003 CON review process was non-competitive in that GHHS was the sole applicant proposing that particular project, *which was ostensibly intended to replace an existing facility.* In contrast, the 2005 CON application process, which arose out of an amended State Medical Facilities Plan designating a need for a new hospital in Harnett County, involved additional applicants.

*Id.* (emphasis supplied).

The majority's opinion misinterprets our Supreme Court's instructions on remand and erroneously holds the Agency correctly analyzed GHHS's 2003 CON application as one for a competitive new project and not as a non-competitive replacement of a respected and long-existing, but physically deteriorated, hospital. I disagree with the analysis and conclusion of the majority's opinion and vote to reverse the Agency's Final Decision. I respectfully dissent.

## I. Standard of Review

When reviewing the decision of an agency, this Court has stated:

> The proper standard of review by the [appellate] court depends upon the particular issues presented by the appeal. *If appellant argues the agency's decision was based on an error of law, then de novo review is required.* If appellant questions whether the agency's decision was supported by the evidence or whether it was arbitrary or capricious, then the reviewing court must apply the whole record test.

GOOD HOPE HEALTH SYS., L.L.C. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[189 N.C. App. 534 (2008)]

The reviewing court must determine whether the evidence is substantial to justify the agency's decision. A reviewing court may not substitute its judgment for the agency's, even if a different conclusion may result under a whole record review.

*Carillon Assisted Living, LLC v. N.C. Dep't of Health & Human Servs.*, 175 N.C. App. 265, 269, 623 S.E.2d 629, 633 (2006) (internal citations and quotations omitted) (emphasis supplied).

"The whole record test is not a tool of judicial intrusion; instead, it merely gives a reviewing court the capability to determine *whether an administrative decision has a rational basis in the evidence.*" *Hospital Group of Western N.C., Inc. v. N.C. Dep't of Human Resources*, 76 N.C. App 265, 268, 332 S.E.2d 748, 751 (1985) (emphasis supplied) (citation and quotation omitted). If the Agency's decision misinterprets or misapplies the law under *de novo* review or has no "rational basis in the evidence," under whole record review, it must be reversed. *See generally In re Appeals of Southern Railway Co.*, 313 N.C. 177, 187, 328 S.E.2d 235, 242 (1985).

## II. Legislative Policy

The fundamental purpose and legislative intent of the CON Act is set forth in N.C. Gen. Stat. § 131E-175 (2003). The General Assembly listed ten findings of fact used to regulate health care and service facilities in North Carolina. These legislative findings are particularly relevant to this appeal, as they address equal access to health care facilities for all citizens and rising health care costs.

Monopolistic concentrations in the allocation and delivery of health care services by a sole provider diminishes the availability of health services, threatens the health and welfare of citizens, who need economical and readily available health services, and violates the public policy as articulated by the General Assembly. *Id.* N.C. Gen. Stat. § 131E-175(3a) (2003) states, "access to health care services and health care facilities is critical to the welfare of rural North Carolinians, and to the continued viability of rural communities, and that the needs of rural North Carolinians should be considered in the [CON] review process."

Here, it is undisputed that Harnett County's rural population has significantly increased since 2000 and is anticipated to do so in the foreseeable future. The United States Census Bureau confirmed on 20 March 2008 that Harnett County is 13th fastest growing out of North Carolina's 100 counties with a population of 108,721 residents.

GOOD HOPE HEALTH SYS., L.L.C. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[189 N.C. App. 534 (2008)]

Jennifer Calhoun, *Hoke, Harnett Growing Quickly: Counties Near Top in Population Boom*, Fayetteville Observer, March 21, 2008 § B at 1. The great majority of this growth is occurring in the western portions of Harnett County toward Lillington, south of Raleigh along U.S. Highway 401, and north of Fayetteville along N.C. Highways 210 and 27. *Id.*

Other facts are also undisputed: (1) Good Hope Hospital Inc., ("Good Hope") has provided Harnett County and other residents with needed and life-saving health services for nearly a century and (2) the existing Good Hope hospital does not and cannot meet current requirements and certifications, is physically and "functionally obsolete," and must be replaced. The fundamental purposes and legislative intent of the CON Act must be considered and lawfully applied by the Agency when analyzing GHHS's 2003 CON application. *Id.* The Agency utterly failed to correctly apply the statute and unlawfully assumed authority over decisions not subject to CON review, and which are properly within Good Hope's Board of Trustees's discretion.

### III. Analysis

GHHS argues the Agency exceeded its statutory authority and erred by ignoring or misapplying controlling statutes, plans, its prior decisions, and its 2001 Settlement Agreement. I agree.

### A. Background

On 26 September 2003, the Agency's CON Section denied GHHS's 2003 CON application. The Agency concluded the application failed to conform with the requisite statutory criteria set forth in N.C. Gen. Stat. § 131E-183(a) (2003). The Agency found "that the current application submitted by [GHHS] is for a new project, not a change in scope of a previous[] project . . . [t]herefore, [GHHS] must demonstrate that *the addition of a third operating room* is consistent with the need determinations in the 2003 State Medical Facilities Plan . . . ." (Emphasis supplied).

The Agency found there was no need for any additional operating rooms in Harnett County and GHHS's application failed to conform with the operating room need determination in the 2003 State Medical Facilities Plan ("SMFP"). The Agency failed to honor and enforce Good Hope's 2001 approved CON and Settlement Agreement, which specifically authorized the relocation of the acute patient care facilities and three operating rooms.

GOOD HOPE HEALTH SYS., L.L.C. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[189 N.C. App. 534 (2008)]

On 23 October 2003, GHHS filed a petition for a contested case hearing in the Office of Administrative Hearings. On 9 July 2004, after hearing the evidence and making extensive findings of fact, Administrative Law Judge Gray ("Judge Gray") filed his recommended decision reversing the Agency's decision. Judge Gray found, *inter alia*, "[t]he applicant is not seeking to replace any operating room which does not already exist or had not already been approved by the CON Section for Harnett County." Judge Gray concluded, "[p]etitioner has persuaded me by the greater weight of the evidence presented that the agency substantially prejudiced its rights when it denied the 2003 application for a CON to build a much needed, centrally located, replacement hospital in Lillington, North Carolina."

On 10 September 2004, the Agency, without taking additional evidence, rejected Judge Gray's well-reasoned decision and denied GHHS's 2003 CON application. The Agency found that "[d]evelopment of new or additional operating rooms are a new institutional health service, the need for which is subject to any determinative limitations set in the [SMFP]." The Agency further found:

[t]he operating room provided for in [Good Hope's] 2001 CON is an "approved operating room," but it retains that status only with regard to the project for which it was approved, and for the named applicant, [Good Hope], location (near Erwin), and scope authorized in the 2001 SMFP. . . . The 2001 CON was not approved for GHHS, nor for this location in Lillington, nor for this project.

### B. N.C. Gen. Stat. § 131E-181

N.C. Gen. Stat. § 131E-181 (2003) states, "[a] certificate of need shall be valid only for the defined scope, physical location, and person named in the application." The Agency's Final Decision states and the majority's opinion holds that GHHS's 2003 CON application proposed a wholly new project and is not properly reviewed as a modification to the previously approved 2001 CON and Settlement Agreement because the 2003 CON application changed the scope, location and person of the proposed project. I disagree.

### 1. Change in Scope

The majority's opinion apparently holds that because the 2003 CON application proposed doubling the size of the facility and increased its capital expenditures, it changed the scope of the project previously approved in the 2001 CON and Settlement Agreement. I disagree.

**GOOD HOPE HEALTH SYS., L.L.C. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.**

[189 N.C. App. 534 (2008)]

In its 2001 CON application, Good Hope proposed to partially replace its existing facility by constructing a new hospital to house acute patient care services for a total capital cost of $16,159,950.00. The new hospital was proposed as a one-story building, totaling 61,788 square feet. All acute care and inpatient psychiatric services were to relocate to the new site. Good Hope proposed and the Agency expressly allowed Good Hope to maintain the hospital's ancillary and support services at the existing facility. The new hospital was approved to contain a total of forty-six beds: thirty-four acute care beds and twelve inpatient psychiatric beds.

The Agency approved Good Hope's 2001 CON application based upon the condition that Good Hope only develop two operating rooms. Good Hope successfully challenged that portion of the Agency's decision. Good Hope and the Agency entered into a binding Settlement Agreement, which expressly approved the development of a third operating room.

On 14 December 2001, the Agency issued a CON to Good Hope authorizing the relocation of the acute care and inpatient services of the hospital to a new facility with forty-six beds and three operating rooms, with ancillary and support services remaining at the existing facility. Good Hope was unable to raise the necessary financing to build the approved project at that time.

In 2002, Good Hope secured private financing and partnered with Triad Hospitals, Inc. to form GHHS. GHHS proposed to recombine all services and totally replace its existing facility at an estimated capital cost of $33,488,750.00. The facility was proposed as a two-story building with a total of 112,945 square feet. This facility would also contain forty-six beds and three operating rooms—exactly the same number of beds and operating rooms the Agency had approved in the 2001 CON and Settlement Agreement. The existing facility was to be used for general storage or leased as office space. CON review was not required for the relocation of these ancillary and non-medical services. None of these services are statutorily defined as "[n]ew institutional health service[s]." *See* N.C. Gen. Stat. § 131E-178 (2003) ("No person shall offer or develop a new institutional health service without first obtaining a [CON] . . . ."); *see generally* N.C. Gen. Stat. § 131E-176(16) (2003) (stating the definitions of "[n]ew institutional health services"). The 2003 CON application also included the development of ten observation beds, also not subject to CON review. N.C. Gen. Stat. § 131E-176(16).

GOOD HOPE HEALTH SYS., L.L.C. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[189 N.C. App. 534 (2008)]

As a sole applicant, GHHS's 2003 CON application extensively detailed the proposed changes to the previously approved 2001 partial relocation. The 2003 CON application did not change the number of beds or operating rooms contained in the facility and did not propose any new health services or equipment. The 2003 CON application modified the 2001 CON project by: (1) proposing private patient rooms; (2) changing the design of the hospital from a one-story building to a two-story building to accommodate the ancillary and support services previously planned to remain at the existing location; (3) designating additional office space for staff members; and (4) designating additional space for ancillary and support services. It is undisputed that the 2003 CON application did not alter the scope of services that are subject to CON review, and proposed exactly the same number of beds and operating rooms as were previously approved by the Agency in the 2001 CON and Settlement Agreement.

## 2. Change in Location

N.C. Gen. Stat. § 131E-176(24a) (2003) defines "[s]ervice area" as, "the area of the State, as defined in the [SMFP] or in rules adopted by the Department, which receives services from a health service facility." Undisputed evidence shows Good Hope's and GHHS's service area is Harnett County, as is defined by the 2003 SMFP.

The 2001 CON approved Good Hope's proposal to relocate the acute and patient care services from its existing facility to a new building located on fifty-one acres situated on Highway 421, northwest of Erwin. GHHS's 2003 CON application proposed to build the replacement facility on a thirty-five acre site also located on U.S. Highway 421, nearer to the town of Lillington.

The existing hospital, the 2001 approved site and the 2003 proposed site are all located within the same service area, Harnett County. The CON Section Chief, Lee Hoffman ("Hoffman"), testified that the Agency "did not find fault with the Lillington location." Hoffman also testified that the proposed site in Lillington "was not a factor that was used to find [GHHS] nonconforming with any of the review criteria."

Further, the following colloquy took place during oral arguments before this Court on 14 September 2005, the same day as this appeal was argued, in the companion case of *Good Hope Health Sys., L.L.C. v. N.C. Dep't of Health & Human Servs.*, 175 N.C. App. 309, 623 S.E.2d 315 (2006):

[The Court]: Was the fact that the application in 2003 was made by the joint venture, as opposed to Good Hope alone, was that a factor in the Agency's decision to deny?

[Attorney General]: No your honor. The Agency found no fault in the applicants in this case. There is . . . I think you will find some because [sic] there are multiple parties involved you will find other evidence to the contrary but from the Agency's perspective, *the Agency had no problem with either who the applicant was in this case nor did the Agency have a problem with where the proposal was to be built.*

[The Court]: So in terms of the applicant, the composition of the applicant being a joint venture, *as well as the physical location,* that the Agency agreed with both of those?

[Attorney General]: Yes your honor.

(Emphasis supplied).

By the CON Section Chief's and the Attorney General's own admissions and stipulations, the physical location where the proposed replacement hospital was to be built was within the Harnett County service area and was not an issue in the Agency's Final Decision. No conflicting evidence appears in the record to support a contrary finding or conclusion. The Agency's finding that the 2003 CON application proposed a change in service area location is not supported by any evidence, and has been conceded by the Agency's CON Section Chief and counsel as irrelevant to any issue on appeal.

### 3. Change in Person

The majority's opinion states that the agreement attached to the 2003 CON application was ineffective to assign Good Hope's rights under the 2001 CON and Settlement Agreement to GHHS. I disagree. As noted above, the Attorney General expressly conceded that "the composition of the applicant being a joint venture" was wholly irrelevant to the Agency's decision.

The 2001 Settlement Agreement between Good Hope and the Agency explicitly states, "[t]his agreement shall be binding upon the Parties and their successors and assigns." The term "assigns" is defined as "those to whom property is, will, or *may be* assigned." *Black's Law Dictionary* 119 (6th ed. 1990) (emphasis supplied).

The 2003 CON application contained a written agreement between Good Hope and GHHS that contained the following clause:

GOOD HOPE HEALTH SYS., L.L.C. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[189 N.C. App. 534 (2008)]

A. Transfer of Assets. At closing, [Good Hope] shall convey and deliver to [GHHS] all assets owned or used by [Good Hope] in connection with the operation of the Existing Hospital including without limitation, *all licenses, permits, governmental approvals,* normal operating contracts, goodwill, patient lists, records, employees, services, *beds, operating rooms, procedure rooms,* equipment, furniture, supplies and receivables.

(Emphasis supplied). This agreement is sufficient to establish that GHHS is Good Hope's "assign" to the 2001 CON and Settlement Agreement. The terms contained therein are binding upon the Agency and GHHS.

GHHS's 2003 CON application was for the same scope, location, and person named in the previously approved 2001 CON. N.C. Gen. Stat. § 131E-181. The Agency was statutorily required to analyze GHHS's 2003 CON application as a modification to the previously approved relocation in the 2001 CON and Settlement Agreement and not as a wholly new project.

### C. N.C. Gen. Stat. § 131E-176(16)

GHHS argues the proposed changes to the 2001 CON were the only terms subject to review in their 2003 CON application. GHHS further argues that the Agency had statutory authority to request information and review only the proposed increases in capital expenditures for new institutional health services pursuant to N.C. Gen. Stat. § 131E-176(16)(e).

N.C. Gen. Stat. § 131E-176(16)(e) (2003) states:

(16) "New institutional health services" means any of the following:

(e) A change in a project that was *subject to certificate of need review* and for which a certificate of need was issued, if the change is proposed during the development of the project or within one year after the project was completed. For purposes of this subdivision, a change in project is a change of more than fifteen percent (15%) of the approved capital expenditure amount or the addition of a health service that is to be located in the facility, or portion thereof, that was constructed or developed in the project.

(Emphasis supplied).

GOOD HOPE HEALTH SYS., L.L.C. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[189 N.C. App. 534 (2008)]

N.C. Gen. Stat. § 131E-182(b) (2003) provides, in relevant part:

The ·application forms, *which may vary according to the type of proposal,* shall require such information as the [Agency], by its rules deems necessary to conduct the review. An applicant shall be required to furnish *only* that information necessary to determine *whether the proposed new institutional health service* is consistent with the review criteria implemented under G.S. 131E-183 and with duly adopted standards, plans and criteria.

(Emphasis supplied). Based upon the preceding statutes, the Agency had authority to review only the criteria relating to the increase in capital expenditures pursuant to N.C. Gen. Stat. § 131E-176(16)(e). The additional costs were inflationary increases due to the Agency's delays. The costs to construct the ancillary and support services, originally intended to remain at the existing location, are not "new institutional health services" and are not subject to CON review.· *See generally* N.C. Gen. Stat. § 131E- 176(16) (2003) (stating the definitions of "[n]ew institutional health services").

### D. Review Criteria

N.C. Gen. Stat. § 131E-183 (2003) sets forth the relevant criteria the Agency is to review prior to issuing a CON. The Agency's Final Decision found that GHHS's 2003 CON application failed to conform with statutory review criteria 1, 3, 4, 5, 6, 12, 18a, and 10 N.C.A.C. 14C Section 2100. I disagree.

### 1. Criterion 1

N.C. Gen. Stat. § 131E-183(a)(1) (2003) states:

The proposed project shall be consistent with applicable policies and need determinations in the [SMFP], the need determination of which constitutes a determinative limitation on the provision of any health service, health service facility, health service facility beds, dialysis stations, operating rooms, or home health offices that may be approved.

### i. Third Operating Room

The majority's opinion holds that GHHS failed to demonstrate that the provisions of the 2003 SMFP and criterion 1 did not apply to its 2003 CON application. The majority's opinion states that there were only two existing operating rooms at Good Hope at the time the 2003 CON application was submitted to the Agency and that GHHS

obtained no rights to a third operating room under the 2001 Settlement Agreement. I disagree.

The Agency's Final Decision specifically states the third operating room provided for in Good Hope's 2001 CON was an "approved operating room." The Agency found that it only retained that status for the project for which it was approved and for the named applicant, location, and scope authorized in 2001. As discussed above, the Agency and its counsel conceded that GHHS's 2003 CON application was for the same scope, location, and person named in the 2001 CON and Settlement Agreement. The development and relocation of a third operating room had been previously approved by the CON Section for Harnett County. Criterion 1 does not apply to GHHS's 2003 CON application. The Agency erred in subjecting GHHS to a further need determination for operating rooms set forth in the 2003 SMFP under this criterion.

### ii. SMFP Policy AC-5

There is also no need for this Court to review whether GHHS complied with criterion 1 regarding the replacement of acute care bed capacity. In its Final Decision, the Agency stated, "[b]ased upon the growth in population in Harnett County, the Agency determined that it the applicant [sic] provided sufficient evidence to demonstrate that it is reasonable to project the facility would increase utilization to reach occupancy of 65% in its 34 acute care beds by 2008." GHHS demonstrated it complied with Criterion 1 regarding acute care bed capacity. The Governor specifically amended the 2005 SMFP to create a need for 50 additional hospital beds with operating rooms over and above those approved for the existing Good Hope and Betsy Johnson hospitals in Harnett County. *See Good Hope Health Sys., L.L.C. v. N.C. Dep't of Health & Human Servs.*, 188 N.C. App. 68, —, — S.E.2d —, — ( 2008).

### 2. Criteria 3 and 3(a)

GHHS argues the Agency erred by applying N.C. Gen. Stat. § 131E-183(a)(3) to their review because "the common numbering indicates criteria 3 and 3(a) are alternative and not independent criteria." I agree.

"[O]ur primary task in statutory construction is to ensure that the purpose of the Legislature in enacting the law, the legislative intent, is accomplished." *Hunt v. Reinsurance Facility*, 302 N.C. 274, 288,

GOOD HOPE HEALTH SYS., L.L.C. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[189 N.C. App. 534 (2008)]

275 S.E.2d 399, 405 (1981) (citation omitted). "Legislative purpose is first ascertained from the plain words of the statute." *Electric Supply Co. v. Swain Electrical Co.*, 328 N.C. 651, 656, 403 S.E.2d 291, 294 (1994) (citation omitted). This Court is also guided by "the structure of the statute and certain canons of statutory construction." *Id.* (citations omitted). The plain language of N.C. Gen. Stat. § 131E-183(a)(3) and (3a) (2003) controls the proper analysis.

N.C. Gen. Stat. § 131E-183(a)(3) applies to new projects and provides:

*The applicant shall identify the population to be served by the proposed project, and shall demonstrate the need that this population has for the services proposed,* and the extent to which all residents of the area, and, in particular, low income persons, racial and ethnic minorities, women, handicapped persons, the elderly, and other underserved groups are likely to have access to the services proposed.

(Emphasis supplied).

N.C. Gen. Stat. § 131E-183(a)(3a) applies to changes in existing services and provides:

*In the case of a reduction or elimination of a service, including the relocation of a facility or a service, the applicant shall demonstrate that the needs of the population presently served will be met adequately by the proposed relocation* or by alternative arrangements, and the effect of the reduction, elimination or *relocation* of the service on the ability of low income persons, racial and ethnic minorities, women, handicapped persons, and other underserved groups and the elderly to obtain needed health care.

(Emphasis supplied).

Criterion 3(a) specifically addresses CON applications that seek approval of the relocation of an existing facility and its impact on "underserved groups and the elderly" whereas criterion 3 addresses CON applications for a wholly new project and the ability of the new applicant to serve these same "underserved groups." *Id.* Based upon the plain language of the statutes, N.C. Gen. Stat. § 131E-183(a)(3) and (3a) are alternative criteria. Criterion 3 is inapplicable to GHHS's 2003 CON application, which proposed a "relocation of a facility or a service." *Id.* In its Final Decision, the Agency expressly found that

576          IN THE COURT OF APPEALS

GOOD HOPE HEALTH SYS., L.L.C. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[189 N.C. App. 534 (2008)]

GHHS' application conformed with criterion 3a. Further review of criterion 3a is unnecessary.

### 3.  Remaining Criteria

The majority's opinion fails to address the remaining statutory review criteria for GHHS's 2003 CON application. Because I vote to reverse the Agency's Final Decision, it is necessary to review the Agency's decision of criteria 4, 5, 6, 12, 18a and 10 N.C.A.C. 14C Section 2100.

### i.  Criterion 4

N.C. Gen. Stat. § 131E-183(a)(4) (2003) states, "[w]here alternative methods of meeting the needs for the proposed project exist, the applicant shall demonstrate that the least costly or most effective alternative has been proposed." In its Final Decision, the Agency made the following findings of fact:

111.  GHHS in its application understood the need to demonstrate the need for the larger-sized facility proposed in the 2003 application and, as a part of that demonstration, included a comparison of the proposed facility with both the existing facility and with the facility proposed approved in the 2001 CON . . . .

. . . .

115. . . . [T]he GHHS application for the most part did not explain why the specific spaces described above were needed, or why they were more effective than the space proposed in the replacement facility described in [the 2001 CON].

The Agency concluded, "[t]he Agency's conclusion that GHHS'[s] application was non-conforming with Statutory Review Criterion 4 was not erroneous, in excess of statutory authority, arbitrary and capricious, or based on improper procedure or a failure to act as required by law or rule." I disagree.

In its Final Decision, the Agency wholly failed to take into consideration that the proposed replacement facility in the approved 2001 CON relocated only portions of the hospital's services, whereas, the proposed replacement facility in the 2003 CON application was a recombination of all facilities. In the approved 2001 CON, the new facility was to be constructed as a one-story building containing all acute care and inpatient psychiatric services. Good Hope originally proposed and the Agency expressly consented in the 2001 CON for

GOOD HOPE HEALTH SYS., L.L.C. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[189 N.C. App. 534 (2008)]

Good Hope to maintain the existing facility for the hospital's ancillary and support services.

In GHHS's 2003 CON application, the relocated facility: (1) contained the same number of acute care and inpatient psychiatric services; (2) contained three approved operating rooms; and (3) proposed to rejoin all the hospital's ancillary and support services at one location. During the review process, other State and Federal agencies determined that the existing Good Hope facility failed to comply with life safety codes, licensure standards, and other physical and environmental requirements, to allow Good Hope's non-CON ancillary and support services to remain at the existing building.

Attached to its 2003 CON application, GHHS provided extensive information regarding the proposed facility including: (1) a complete table concerning construction costs per square foot and construction cost per bed; (2) a table comparing the square feet by department in the existing facility to the proposed facility; (3) a table containing a detailed comparison of the proposed project to the existing facility, including the rationale for each change; (4) several documents comparing GHHS's proposed facility to the Betsy Johnson Regional Hospital project plans, which tended to show that GHHS's facility plan was more efficient than the Betsy Johnson facility design; and (5) a detailed summary of why GHHS's 2003 CON application was less costly and a more effective alternative to the 2001 approved facility.

Applying the whole record test, the agency's conclusion that GHHS failed to demonstrate it had conformed with criterion 4, does not have "a rational basis in the evidence." *Hospital Group of Western N.C., Inc.*, 76 N.C. App. at 268, 332 S.E.2d at 751. GHHS presented substantial and unchallenged evidence that established GHHS's 2003 CON application conformed with criterion 4.

### ii. Criterion 5

N.C. Gen. Stat. § 131E-183(a)(5) (2003) provides, "[f]inancial and operational projections for the project shall demonstrate the availability of funds for capital and operating needs as well as the immediate and long-term financial feasibility of the proposal, based upon reasonable projections of cost of and charges for providing health services by the person proposing the service."

The Agency found that GHHS's 2003 CON application did not conform with criterion 5 even though GHHS presented uncontested evidence consisting of: (1) a letter stating "Triad will meet these obliga-

tions through a combination of available cash; $68.3 million as of December 31, 2002 as evident from the enclosed financial statements and draws on an existing line of credit in the amount of $250 million[]" and (2) a Form 10-K Triad had filed with the United States Securities and Exchange Commission, referencing a line of credit. The Agency applied criterion 3, not 3(a), and concluded that GHHS "failed to adequately demonstrate that the immediate and long-term financial feasibility of the proposal is based upon reasonable projections of costs and revenues."

As noted above, the Agency improperly applied criterion 3 and not 3(a), regarding a relocation of a facility, to its determination concerning criterion 5 and committed an error of law. GHHS presented undisputed evidence of the financial feasibility to construct and operate the proposed replacement facility and demonstrated GHHS's 2003 CON application conformed with criterion 5.

### iii.  Criteria 6, 12, and 18a

The Agency found GHHS non-conforming with: (1) criterion 6 because it was found non-conforming with criteria 1 and 3; (2) criterion 12 because it was found non-conforming with criteria 3 and 4; and (3) criterion 18a because it was non-conforming with criteria 1, 3, and 6.

GHHS's 2003 CON application conformed with criteria 1 and 4. Only criterion 3(a) and not criterion 3 applies to an application for a modification to the relocation of an existing CON. No evidence contradicts that GHHS's 2003 CON application conformed with criteria 6, 12, and 18a.

### iv.  10 N.C.A.C. 14C Section 2100

"The rules contained in 10 N.C.A.C. 14C Sect. 2100, et seq., apply to any applicant proposing to increase the number of operating rooms." This provision is inapplicable to GHHS's 2003 CON application. The 2001 CON and Settlement Agreement specifically authorized the development and relocation of three operating rooms.

### IV.  Conclusion

The Agency was statutorily required to analyze GHHS's 2003 CON application as a modification to the previously approved 2001 CON and Settlement Agreement to relocate an existing institutional health service. The 2003 CON application did not change the statutorily defined scope, location, or person of the proposed project. The Agency and its counsel conceded that the location of the facility and

the entity status of GHHS was not an issue to the Agency. The record clearly shows the 2003 CON proposed *exactly* the same number of beds and operating rooms approved in the 2001 CON and Settlement Agreement. The Agency had statutory authority to request information and review only the proposed increase in capital expenditures pursuant to N.C. Gen. Stat. § 131E-176(16)(e). Good Hope was not required to secure CON approval as a "new institutional health service" to recombine its ancillary and support services at one location. The Agency was aware of and consented to these services remaining at the existing facility in 2001.

GHHS's 2003 CON application demonstrated it had conformed with all applicable statutory review criteria pursuant to N.C. Gen. Stat. § 131E-183(a). The Agency committed an error of law in its interpretation and application of the CON statutes to GHHS's 2003 CON application.

Under whole record review, the Agency's Final decision does not have "a rational basis in the evidence" and should be reversed. *See* N.C. Gen. Stat. § 150B-51(b) (2003) (stating this Court can reverse or modify the agency's decision if the agency's findings, inferences, conclusions, or decisions are, *inter alia*, affected by error of law). The Administrative Law Judge's findings of fact are supported by substantial and uncontested evidence and its recommended decision should have been adopted by the Agency as its Final decision. I respectfully dissent.